UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL E. BURNS, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>ROMERO GENERAL CONSTRUCTION, et al.,<br><br>        Defendants. | Case No. 13-cv-05647-JSC<br><br>**ORDER GRANTING PLAINTIFF'S REQUEST TO ENTER JUDGMENT**<br><br>Re: Dkt. No. 37 |

This action was conditionally dismissed on November 5, 2014 after the parties entered into a Stipulation for Entry of Judgment. (Dkt. No. 36.) Based on the failure of Defendants Romero General Construction and Keith Reilly ("Defendants") to make payments as set forth in the Stipulation for Entry of Judgment, Plaintiffs now move for entry of judgment. (Dkt. No. 37.) Having reviewed the parties' submissions, the Court GRANTS Plaintiff's request and will enter judgment in Plaintiffs' favor and against Defendants in the amount of $101,888.15.

**BACKGROUND**

On December 6, 2013, Plaintiffs Russell E. Burns and Richard Piombo, in their capacities as Trustees of the Operating Engineers' Health and Welfare Trust Fund, *et al.* (collectively, "Trust Funds"),[1] filed the instant action against Defendants. Plaintiffs' trust funds are governed by ERISA. (Dkt. No. 1 ¶ 1.) The Complaint alleged that Defendants breached a collective bargaining agreement (the "Agreement") with the Operating Engineers Local Union No. 3 of the

---

[1] Plaintiffs filed the Complaint on behalf of the Operating Engineers' Health and Welfare Trust Fund; Pension Trust Fund for Operating Engineers; Pensioned Operating Engineers Health and Welfare Fund; Operating Engineers and Participating Employers Pre-Apprenticeship, Apprenticeship, and Journeymen Affirmative Action Training Fund; and Heavy and Highway Committee. (Dkt. No. 1.)

1   International Union of Operating Engineers, AFL-CIO ("Union"), as well as the trust funds'
2   governing documents incorporated therein, which obligated Defendants to submit monthly reports
3   of hours worked by its employees and regularly to pay certain sums of money called contributions
4   to the funds for fringe benefits, to the union for union dues, and to other industry promotion funds.
5   (*Id.* ¶¶ 10-11, 13.)  The amount of contributions that Defendants owe is based on the hours its
6   employees work.  (*Id.* ¶ 13.)  In the Complaint, Plaintiffs alleged that Defendants owed amounts
7   for February through April 2013, September 2013, and October 2013 and all other unpaid
8   contributions due at the time of Judgment, along with 20% liquidated damages and 10% interest
9   per annum for each delinquent payment, and reasonable attorneys' fees and costs.  (*Id.* ¶¶ 13, 17.)
10          On November 3, 2014, the parties entered a settlement agreement, as set forth in the
11  Stipulation for Entry of Judgment.  (Dkt. No. 37-1; *see also* Dkt. Nos. 35 (Notice of Settlement),
12  36 (Conditional Dismissal).)   At the time the parties reached the Stipulation for Entry of
13  Judgment, the total amount due was $138,536.37.  (*See* Dkt. No. 37-1 ¶ 3.)  That total included
14  late-paid contributions, interest associated with those contributions, $45,121.26 in liquidated
15  damages for the late payments, and $14,882.32 for attorneys' fees and costs for work done up until
16  the settlement.  (*Id.*)  Pursuant to the Stipulation, Plaintiffs agreed to make payments in
17  accordance with a 12-month payment plan to satisfy the principal debt.  (*Id.*)  The parties agreed
18  that Defendants' monthly payments—*i.e.*, installment payments—would consist of the full amount
19  of the contribution owed less liquidated damages, which would be waived at the end of the
20  payment term if Defendants fully and timely complied with the terms of the Stipulation.  (*Id.*)
21  The parties also agreed that beginning with contributions due for hours that Defendants'
22  employees worked in October 2014, Defendants were also obligated to remain current on Trust
23  Fund contributions as they became due, or face interest and liquidated damages on those
24  contributions, as well.  (*Id.* ¶ 5.)
25          The Stipulation further provides that judgment may be entered in favor of Plaintiffs and
26  against Defendants upon default of any of Defendants' obligations set forth in the Stipulation,
27  including failure to make either an installment payment on the principal or a regular monthly
28  contribution payment on the date it comes due.  (*Id.* ¶¶ 4, 10.)  Entry of judgment in the full

amount, plus additional attorneys' fees and costs incurred during the term of the Stipulation, is contingent on seven days' written notice to Plaintiffs, an opportunity to cure, and a declaration filed by Plaintiffs. (*Id.* ¶ 10.)

Plaintiffs contend that Defendants defaulted on their obligations under the Stipulation for Entry of Judgment when they failed to submit their seventh stipulated payment in the amount of $8,213.00, and the April 2015 contribution payment in the amount of $8,762.60, which were due to Plaintiffs on or before May 25, 2015. (*See* Dkt. No. 37 ¶ 4.) On May 27, 2015, two days after the amount became due, Plaintiffs sent a written demand letter to Defendants pursuant to the Stipulation for Entry of Judgment, notifying Plaintiffs of their obligation to cure the default by submitting their seventh stipulated payment and April 2015 contribution payment within seven days of the default notice, *i.e.*, by June 3, 2015. (*Id.* ¶ 5.) Defendants failed to submit the payments within the seven-day cure period.

On June 4, 2015—what would have been the eighth day—Defendants contacted Plaintiffs to inquire whether it was too late to send a check for the past due amounts. (Dkt. No. 45 ¶ 2.) Plaintiffs responded that they would deem Defendants' default cured if they received payment in full via cashier's check by the following day.[2] (*Id.* ¶ 3.) Defendants represented to Plaintiffs that they were unable to send a cashier's check that day, but could obtain one the next day and have it delivered to Plaintiffs by the day after that (June 6).[3] Because Defendants represented that they could not get Plaintiffs a cashier's check by June 5, Plaintiffs prepared the instant request for entry of judgment. (Dkt. No. 45 ¶ 5.) On June 5, once they had finished preparing the request, Plaintiffs received an email copy of a cashier's check for the full amount Defendants owed. (*Id.*) Plaintiffs nevertheless filed their request for Entry of Judgment along with the required declaration

---

[2] The Stipulation for Entry of Judgment provided that Plaintiff may elect to receive all payments in cashier's check once Defendants default on any prior payment. (Dkt. No. 37-1 ¶ 10(b).)

[3] The parties dispute the reason for Defendants' inability to send a cashier's check on June 4, 2015. Defendants contend that it was because they did not have time to get a cashier's check that day, so any check would have to be obtained the following day and sent via overnight mail to arrive the day after. Plaintiffs, on the other hand, aver that Defendants represented that they were unable to send a cashier's check that day because they were still waiting to receive funds to cover the amount.

3

itemizing the remaining amounts owed.  (Dkt. No. 37.)  In light of Defendants' failure to cure its default on the required payments pursuant to the terms of the Stipulation for Entry of Judgment, they ask the Court to award them the following: (1) $94,409.93 in unpaid stipulated principal payments plus $415.09 in interest and $45,121.26 in liquidated damages on the principle; (2) $10,539.12 for the April 2015 unpaid contribution to the Trust Fund along with liquidated damages and interest thereon; and (3) $5,671.70 in attorneys' fees and costs for a total of $110,650.75.  (Dkt. No. 37 ¶ 7.)

Upon the filing of Plaintiffs' request for entry of judgment, Defendants sent the April 2015 contribution payment in the amount of $8,762.60 directly to the union; that check has cleared the bank.  (Dkt. No. 40-1 ¶ 6; *see also* Dkt. No. 40-5.)  Plaintiffs' counsel avers that the Trust Funds received that check on June 12, 2015.  (Dkt. No. 45 ¶ 6.)  Defendants also sent a non-cashier's check in the amount of $8,213.00 to Plaintiffs for the monthly stipulated payment.  (Dkt. No. 40-1 ¶ 6; Dkt. No. 40-6.)  Plaintiffs received that check on June 17, 2015, but did not cash it.

The Court then issued an order directing Defendants to show cause why judgment should not be entered against them.  (Dkt. No. 39.)  Defendants responded to the show cause order, essentially admitting they had defaulted by missing the required payments and not timely curing their default.  However, Defendants urge the Court to exercise its discretion to decline to enforce the parties' agreement on the grounds that entry of judgment is too severe a penalty for the slight delay that occurred in this case.  (Dkt. No. 40 at 6.)[4]  Defendants also argue that the liquidated damages Plaintiffs seek are so high that awarding the full amount "would constitute an impermissible penalty under California Law[.]"  (*Id.* at 4.)  Defendants also contend that Plaintiffs' claimed attorneys' fees are unreasonable and should therefore be reduced or eliminated.  (*Id.* at 7-8.)

## LEGAL STANDARD

"[I]n the usual litigation context . . . courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it; the actual merits of the

---

[4] Page numbers throughout this Order refer to those that the Court's electronic filing system automatically assign.

controversy become inconsequential." *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978). "[D]isputes concerning a settlement agreement are governed by applicable state contract law." *U.A. Local 342 Joint Labor-Mgmt. Comm. v. S. City Refrigeration, Inc.*, No. C-09-3219 JCS, 2010 WL 1293522, at *2 (N.D. Cal. Mar. 31, 2010).

## DISCUSSION

The Stipulation for Entry of Judgment expressly provides that judgment in the amount of $138,536.37 plus interest but less principal payments made shall be entered against Defendants if they fail to make payment and Plaintiffs provide notice and the opportunity to cure the default within seven days. Here, Defendants missed the seventh payment required pursuant to the Stipulation for Entry of Judgment and failed to cure the default. Plaintiffs have fulfilled the requirement that they provide seven days' notice and a declaration in support of entry of judgment, and Defendants have not shown good cause why judgment should not be entered. The requested judgment is therefore warranted. Indeed, other courts in this District have seen fit to enter judgment in similar situations. *See, e.g.*, *Bd. of Trustees v. Brisbin*, No. C 13-01866 LB, 2014 WL 2916491, at *4 (N.D. Cal. June 26, 2014); *Bd. of Trustees of Pipe Trades Dist. Council No. 36 Health & Welfare Trust Fund v. RT/DT Inc.*, No. C 11-04015 LB, 2012 WL 3236797, at *4 (N.D. Cal. July 5, 2012); *S.F. Residence Club v. Amado*, No. C09-2054 RS (JSC), 2012 WL 2119269, at *1 (N.D. Cal. June 11, 2012); *Geller v. Bowers*, No. CV 11-00874 PSG, 2012 WL 1895961, at *2 (N.D. Cal. Apr. 13, 2012); *U.A. Local 342 Joint Labor-Mgmt. Comm.*, 2010 WL 1293522, at *3.

Indeed, Defendants appear to concede that they missed a payment in violation of the Stipulation for Entry of Judgment but nevertheless ask the Court to exercise its discretion to deny entry of judgment. Tellingly, Defendants do not cite any case law in support of this proposition, and the Court has found none. And while Defendants urge that it would be unfair to enter judgment based on Defendants' "minimal" departure from strict compliance and their efforts to remedy the error, fairness actually compels the opposite result: the parties agreed to enter judgment under these circumstances and, other than the 7-day cure period, chose not to include any further loophole for missed payments or further opportunity to cure.

Defendants' arguments to the contrary are unavailing. First, Defendants contend that given

only $41,065.00 in outstanding installment payments remain, awarding the full amount of liquidated damages set forth in the Stipulation for Entry of Judgment—*i.e.*, $49,278.00—is so excessive that it would constitute an unfair and unlawful penalty in violation of California law. (Dkt. No. 40 at 4.)  In support of this argument, Defendants cite cases in which California courts struck as excessive provisions in stipulated judgments providing for liquidated damages in amounts that nearly equaled or far exceeded the total principal settlement amount.  *See, e.g.*, *Purcell v. Schweitzer*, 224 Cal. App. 4th 969, 975-76 (2014) (striking from stipulated judgment provision for $60,000 of liquidated damages for principal payment of $38,000); *Greentree Fin. Grp., Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th 495, 500 (2008) (striking judgment involving $40,000 of liquidated damages where total principal payment due was $20,000); *Sybron Corp. v. Clark Hosp. Supply Corp.*, 76 Cal. App. 3d 896, 902 (1978) (striking judgment involving $28,000 liquidated damages provision where total principal payment due was $30,000).  Not so here: while the total outstanding principal amount left is only $41,065.00, the total principal amount in the stipulated judgment was far more: $93,415.11.  (*See* Dkt. No. 37 ¶ 7.)  In light of that total amount, the liquidated damages now sought are reasonable.  Moreover, Defendants' reliance on *Greentree Financial Group* is misplaced for another reason.  *Greentree* was a breach of contract case.  Contrary to Defendants' assertion that *Greentree* presents "a situation exactly like this case" (Dkt. No. 40 at 4), the instant case is not a breach of contract case but rather arises under ERISA, which explicitly provides for liquidated damages in the event that a benefit plan—such as the Trust Funds here—wins a judgment enforcing an employer's obligations pursuant to the statute. ERISA Section 502, 29 U.S.C. § 1132(g)(2).  Specifically, ERISA provides that liquidated damages shall be awarded when (1) the fiduciary obtains a judgment in favor of the plan; (2) unpaid contributions exist at the time of suit; and (3) the plan provides for liquidated damages. *See Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989) (citing ERISA Section 502(g)(2)(C)(ii)).  Each of these factors is present here, so liquidated damages are not just a lawful and enforceable provision in the parties' agreement, but a mandatory aspect of judgment.

Defendants second argument—that Plaintiffs have not proven that the attorneys' fees and

costs they seek are reasonable—fares no better. Attorneys' fees and costs through October 16, 2014 were included in the Stipulation for Entry of Judgment, and totaled $14,148.50 and $733.82, respectively. (Dkt. No. 37-1 ¶ 2.) Defendants argue that the attorneys' fees and costs for work done after settlement was reached are both too high—*i.e.*, "more than those attributed to prosecuting the entire underlying action"— and insufficiently documented as it must "relate solely to sending a few form letters prepared by a paralegal." (Dkt. No. 40 at 7.) But Defendant incorrectly identifies the amount of attorneys' fees and costs that Plaintiff seeks, erroneously including over $10,000 of the unpaid April 2015 contribution as part of a supposed $16,000 fee award. (*Compare* Dkt. No. 37 ¶ 7, *with* Dkt. No. 40 at 7.) In reality, Plaintiff seeks only an additional $5,669.50 in attorneys' fees and $2.20 in costs—less than those attribute to prosecuting the underlying action. What is more, the request for entry of judgment adequately describes the work done since October 14, 2014, citing communications with Plaintiffs' Collections Office regarding Defendants' delinquency; intra-office conferences regarding amounts due; preparing the Stipulation for Entry of Judgment and monitoring compliance therewith; various requests and motions filed on the docket and delivery of chambers copies; communications required to determine hours worked by Defendants' employees; administering the Stipulation; and preparing the default notices and communicating with defense counsel regarding the default. (Dkt. No. 37 ¶ 6.) Plaintiffs further note that administration of the Stipulation here has been particularly costly because Defendants have defaulted on 5 of the 8 payments they made, requiring attorney involvement in connection with each default. (See Dkt. No. 44 at 8.) Thus, while Plaintiffs have neither indicated what their lawyers' hourly rates were nor included detailed billing records for the Court to say whether the time spent on specific tasks was reasonable, Defendant already agreed to "pay all additional attorneys' fees and costs[.]" (Dkt. No. 37-1.) Moreover, the Court's own review suggests that the amount sought is reasonable to compensate the work described in the declaration of Plaintiffs' counsel. *See Brisbin*, 2014 WL 2916491, at *4 (granting the requested post-settlement attorneys' fees in the amount of $3,474.25 despite the absence of detailed billing records).

However, while it is appropriate to enter judgment in Plaintiffs' favor, the full requested

7

amount of $110,650.75 is not warranted.  Defendants have already paid the $8,762.60 for the April 2015 contributions.  Thus, the Court will exclude this amount from the judgment.  However, an award of liquidated damages on the April 2015 contribution amount is still appropriate because Defendants defaulted, as is the requested interest until June 4, 2015, when Defendants belatedly issued the check to the Trust Funds.  (*See* Dkt. No. 37-1 ¶ 10.)  Accordingly, the Court will enter judgment in the amount of $101,888.15.

## CONCLUSION

For the reasons set forth above, the Court will enter judgment in Plaintiffs' favor and against Defendants in the total amount of $101,888.15, allocated as follows: $49,289.48 in unpaid principal installment payments and interest; (2) $45,121.26 in liquidated damages; (3) $24.00 in interest and $1,752.52 on the late-paid April 2015 contribution to the Trust Funds; and (4) $5,701.70 in post-settlement attorneys' fees and costs.

**IT IS SO ORDERED.**

Dated: July 23, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge